## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
DIVISION: <u>Fort Lauderdale</u>

In re:                                  Case No. 16-16796-RBR
                                        Chapter 13

Manuel Gomez


_____ Debtor(s)      /


## <u>DEBTOR'S MOTION TO APPROVE "SHORT SALE" OF HOMESTEAD PROPERTY AND REQUEST FOR PAYMENT OF ATTORNEY'S FEES AND COSTS</u>

Pursuant to 11 U.S.C. Section 363(b)(1) and Fed. R. Bankr. P. 2002(a), (c) and 6004(a) and (b), the above referenced Debtor hereby requests permission of this Court to sell his Homestead Property located at **510 NW 106 Ter, Pembroke Pines, FL 33026**, with the legal description of: **Pembroke Pointe Section Two 125-15 B Port Ter J Desc As: Comm C/L NW 106** (the "Property"), consistent with the terms of a short sale agreement with the secured lender and represent as follows:

1. The Debtor filed for relief under Chapter 13 of the United Stated Bankruptcy Code on May 11, 2016.

2. By Order dated December 2, 2016, the Court Confirmed the Debtor's 4th Amended Chapter 13 Plan which provided for payment of the pre-petition mortgage arrearage to CITIMORTGAGE, INC., the lender holding a first mortgage on the Property.

3. Additionally, Debtor's Chapter 13 Plan provided for payment of pre-petition Homeowner's Association arrearages to Southbridge Homeowners Associations, Inc.

4. The Debtor listed an interest in the Property on Schedules A and D filed with the Court in this case. The scheduled value of the Property as of the petition date was **<u>$ 202,970.00</u>**.

5. The Debtor has entered into a contract to sell the Property.  A copy of the sales contract is

attached as Exhibit 'A.'

6.  As evidence by the estimated HUD Settlement Statement that is attached hereto as Exhibit "B," the purchase price for the property is **$212,000.00**.

7.  Sale proceeds shall be distributed as follows:

    a.  The Property subject to the first mortgage held by CITIMORTGAGE, INC., in the approximate principle balance of **$224,287.66** as evidence by Proof of Claim No. **8** filed with the Court. The Property is also subject to arrearages owed to the Homeowner's Association in approximate principle balance of **$11,122.64**, as evidenced by Proof of Claim No. **7** filed with the Court.

    b.  First Mortgage Holder, CITIMORTGAGE, INC., through its servicer, CENLAR has agreed to accept an amount less than the claim balance in order to facilitate the sale. A Copy of the Pre-Foreclosure Sale Program Acceptance Letter is attached hereto as Exhibit "C."

    c.  As indicated in the estimated HUD Settlement Statement attached hereto as Exhibit "B" the arrearage balance owed to the Southbridge Homeowners Associations, Inc. is to be paid in full at the time of closing.

    d.  The Property may also be subject to unpaid assessments by the Broward County Property Appraiser which will be paid at closing.

    e.  There is anticipated to be no remaining funds or sale proceeds paid to the Debtor at closing.

8.  The Property was listed for sale through Floridian Reality Corp, realtor, and the Debtor represents that the Property is being sold at Fair Market Value.

9.  As indicated on Exhibit "A," the proceeds of the sale will not be sufficient to satisfy the

underlying mortgage, but the holder of the first mortgage has agreed to accept the offer

for sale for an amount less than the balances of the loans secured by the first mortgage.

See the Pre-Foreclosure Sale Program Acceptance Letter is attached hereto as Exhibit

"C."

10. The sales proceeds will be sufficient to pay accrued real property taxes and reasonable

settlement charges, including a total sales commission of approximately **$12,720.00** split

between the seller and buyer's agents, both of whom are with Floridian Reality Corp.

11. The buyer, **Ivan Cejas**, is a disinterested party and has no relation, either economic or

familial, to the Debtor. See Real Estate Purchase Contract attached hereto as Exhibit "A."

12. The Debtor has incurred attorney fees and costs in an amount of **$500.00** for filing this

Motion. The Debtor will be filing a Motion to Modify his Chapter 13 Plan and requests

payment of such fees in the Modified Plan.

**WHEREFORE**, based upon the foregoing representations, the Debtor requests an Order

authorizing the sale and approving the terms of the Sale of the Property and for an Order

allowing attorney's fees and costs to be paid through the Modified Plan in an amount of

$500.00.


Dated: July 30, 2019

/s/Matthew E. Mazur, Jr, Esq.

Matthew E. Mazur, Jr., Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of this motion was served electronically via ECF to:

Nancy K. Neidich, Trustee, PO Box 279806, Miramar, FL 33027; Office of the U.S. trustee, 51

SW 1st Avenue, Suite 1204, Miami, FL 33130, and all parties of interest **on July** 30**, 2019.**

<u>/s/ Matthew E. Mazur, Jr., Esq.</u>
Matthew E. Mazur, Jr., Esq.
FBN: 0144614
Address 2645 Executive Park Drive, Suite 110
Weston, FL, 33331
Phone (305) 466-3328
Email: mmazurjr@mazur-law.com
Dated: 7/30/19

# EXHIBIT A

# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



1* **PARTIES:** _____ Manuel Gomez _____ ("Seller"),
2* and _____ Ivan Cejas _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*    (a) Street address, city, zip: _____ 510 N.W. 106 Terrace, Pembroke Pines, FL 33026 _____
8*    (b) Located in: ___ Broward ___ County, Florida. Property Tax ID #: _____ 5141 18 07 0592 _____
9*    (c) Real Property: The legal description is PEMBROKE POINTE SECTION TWO 125-15 B POR TR J DESC
10        AS:COMM C/L NW 106
11        _____
12        together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13        attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14        by other terms of this Contract.
15    (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16        which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17        purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18        drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19        and other access devices, and storm shutters/panels ("Personal Property").
20*       Other Personal Property items included in this purchase are: _____
21        _____
22        Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*   (e) The following items are excluded from the purchase: _____
24        _____ *IC*    *MG*

25                                **PURCHASE PRICE AND CLOSING**                        **$212,000**

26* **2. PURCHASE PRICE** (U.S. currency):.............................................................. $ ~~190,000.00~~
27*    (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ ___ 40,000.00 ___
28        The initial deposit made payable and delivered to "Escrow Agent" named below
29*       **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
30        blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31        OPTION (ii) SHALL BE DEEMED SELECTED.
32*       Escrow Agent Information: Name: _____ Law Group of South Florida _____
33*       Address: _____ 782 N.W. 42 Ave., Suite 528, Miami, FL 33126 _____
34*       Phone: ___ 305-260-6147 ___ E-mail: ___ sruiz@lawgroupsf.com ___ Fax: ___ 305-675-9286 ___
35*    (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*       days after Effective Date ..............................................................$ _____
37        (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*    (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ....... _____
39*    (d) Other: _____ ................ $ _____
40    (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*       transfer or other **COLLECTED** funds .............................................. *IC* $ ~~150,000.00~~
42        **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.** *MG*  **$172,000**
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*       _____ July 14, 2018 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46        Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47        the counter-offer is delivered.
48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49        initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51    and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*   ("Closing") on ___ 30 days after lender approval ___ ("Closing Date"), at the time established by the Closing Agent.

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☒ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract.  For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or

(2) terminate this Contract.

---

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

109  (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110  expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111  will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112  by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113  (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114  default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115  from all further obligations under this Contract.

116  (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117  fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118  default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119  have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120  of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121  Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122  Contract.

123* ☐ (c) Assumption of existing mortgage (see rider for terms).

124* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125  **CLOSING COSTS, FEES AND CHARGES**

126  **9.  COSTS TO BE PAID BY SELLER; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127  (a)  **COSTS TO BE PAID BY SELLER:**
128  • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
129  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)      • Recording and other fees needed to cure title
130  • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
131* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)      • Other:_____
132  If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133  a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134  Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135  such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

136  (b)  **COSTS TO BE PAID BY BUYER:**
137  • Taxes and recording fees on notes and mortgages      • Loan expenses
138  • Recording fees for deed and financing statements      • Appraisal fees
139  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)      • Buyer's Inspections
140  • Survey (and elevation certification, if required)      • Buyer's attorneys' fees
141  • Lender's title policy and endorsements      • All property related insurance
142  • HOA/Condominium Association application/transfer fees      • Owner's Policy Premium (if Paragraph
143  • Municipal lien search (if Paragraph 9(c)(ii) is checked)      9 (c)(iii) is checked.)
144* • Other:_____

145* (c)  **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146  then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147  licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148  Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149  obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150  copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151  premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152  forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153  and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154  closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a
155  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156  liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157  **(CHECK ONE):**
158* ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161  provider(s) as Buyer may select; or
162* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163  services related to Buyer's lender's policy, endorsements and loan closing; or

Buyer's Initials _IC_ _____      Page **3** of **12**      Seller's Initials _MG_ _____

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

164*     ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]**: Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168* policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

170   (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

173*   (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
174* _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

177   (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**
183*     ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.
185*     ☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 **DISCLOSURES**

190 **10. DISCLOSURES:**
191   (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195   (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201   (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203   (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217   (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

---

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ | Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

<b>PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS</b>

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) ***PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___10___ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.***

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.

277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

## ESCROW AGENT AND BROKER

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
284 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286 take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287 liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288 the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289 the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290 dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291 notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292 extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293 comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294 mediation, arbitration, interpleader or an escrow disbursement order.

295 In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300 termination of this Contract.

301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
307 GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND
308 FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,
309 WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

324 **15. DEFAULT:**

325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

---

Buyer's Initials IC _____    Page **6** of 12    Seller's Initials *MG* _____
FloridaRealtors/FloridaBar-ASIS-5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.

338 This Paragraph 15 shall survive Closing or termination of this Contract.

339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:

342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).

345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.

351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 ### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

357 **18. STANDARDS:**

358 **A. TITLE:**

359 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
371 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.

374 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

---

Buyer's Initials IC _____        Page **7** of **12**        Seller's Initials MG _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

383  deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384  Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385  (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388  further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
389  Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390  thereby releasing Buyer and Seller from all further obligations under this Contract.
391  **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398  preparation of such prior survey, to the extent the affirmations therein are true and correct.
399  **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401  **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407  6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408  within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409  Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410  this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411  thereunder.
412  **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416  general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
417  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418  for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419  paid or will be paid at Closing.
420  **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421  than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422  specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423  on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424  is located) of the next business day.
425  **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426  liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427  services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428  Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429  unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430  effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431  Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432  performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433  this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434  written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435  further obligations under this Contract.
436  **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437  personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438  described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

FloridaRealtors/FloridaBar-ASIS-5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

439  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440  Contract.

441  **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442  (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446  means.
447  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449  owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451  the survey, flood elevation certification, and documents required by Buyer's lender.
452  (iii) **FinCEN GTO NOTICE.   If Closing Agent is required to comply with the U.S. Treasury Department's**
453  **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454  **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455  **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456  **report of said information to IRS.**
457  (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460  **closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

461  **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465  Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

472  **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486  maximum allowable discounts and applicable homestead and other exemptions.   A tax proration based on an
487  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488  shall survive Closing.

489  **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491  including a walk-through (or follow-up walk-through if necessary) prior to Closing.

492  **M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

496  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

502  **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506  upon, nor extended or delayed by, such Exchange.

507  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT
508  EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509  be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510  the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511  the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512  if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513  (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514  shall be considered as an original. This Contract may be executed by use of electronic signatures,
515  as determined by Florida's Electronic Signature Act and other applicable laws.

516  **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
519  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520  to be bound by it.

521  **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523  rights.

524  **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

526  **S.  COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or
527  received, including Deposits, have become actually and finally collected and deposited in the account of
528  Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents
529  may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

530  **T.  RESERVED.**

531  **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533  county where the Real Property is located.

534  **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538  from the IRS authorizing a reduced amount of withholding.

539  (i)    No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544  to the IRS.

545  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547  reduced sum required, if any, and timely remit said funds to the IRS.

548  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ | Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555  (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556  transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558  disbursement in accordance with the final determination of the IRS, as applicable.
559  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560  8288 and 8288-A, as filed.
561  **W.  RESERVED**
562  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563  *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565  *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567  *Closing.*

568  ADDENDA AND ADDITIONAL TERMS

569*  **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☒ B. Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing |     Line | ☐ X.  Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y.  Seller's Attorney Approval |
| ☒ G. Short Sale | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Z.  Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA.  Licensee Property Interest |
| ☐ I.  RESERVED | ☐ R. Rezoning | ☐ BB.  Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ Other:_____ |
| | | _____ |
| | | _____ |

571*  **20. ADDITIONAL TERMS:** <u>This short sale is contingent upon approval by the bankruptcy court.</u>
572  _____
573  _____
574  _____
575  _____
576  _____
577  _____
578  _____
579  _____
580  _____
581  _____
582  _____
583  _____
584  _____
585  _____
586  _____
587  _____

588  COUNTER-OFFER/REJECTION

589*  ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590  deliver a copy of the acceptance to Seller).
591*  ☐ Seller rejects Buyer's offer.

FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 072711-200153-1517677

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

592  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598  *interested persons.*

599  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600  TO BE COMPLETED.

601*  Buyer: _Ivan Cejas_____  Date: _07/13/2018_____

602*  Buyer: _____  Date: _____

603*  Seller: _Manuel Gomez_____  Date: _07/13/2018_____

604*  Seller: _____  Date: _____

605  Buyer's address for purposes of notice          Seller's address for purposes of notice
606*  _____      _____
607*  _____      _____
608*  _____      _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615*  _____Jorge DiCataldo_____          _____Elena Reyes_____
616  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*  _____Floridian Realty Corp. - 3%_____          _____Floridian Realty Corp._____
618  **Cooperating Broker, if any**          **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: **072711-200153-1517677**

Electronically Signed using eSignOnline™ [ Session ID : 52d7cccf-d7b7-4cf0-bb76-488e6c66712d ]

formsimplicity

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



If initialed by all parties, the clauses below will be incorporated into the Florida Realtors® /Florida Bar Residential Contract
For Sale And Purchase between_____Manuel Gomez_____ (SELLER)
and_____Ivan Cejas_____ (BUYER)
concerning the Property described as 510 N.W. 106 Terrace, Pembroke Pines, FL 33026

*Buyer's Initials*   __IC____   _____       *Seller's Initials*   __MG____   _____

### G. SHORT SALE APPROVAL CONTINGENCY

1. **Approval of Seller's Lender(s) and Requirements for Seller's Approval of Short Sale.** This Contract is contingent upon: (a) Seller's lender(s) and all other lien holder(s) (collectively "Seller's Lender") approving the Purchase Price, terms of this Contract and the HUD-1 settlement statement; (b) Seller's Lender's agreement to accept a payoff which is less than the balance due on the loan or other indebtedness; and (c) Seller's Lender's agreement to release and provide a satisfaction of the mortgage(s) and/or other lien(s) encumbering the Property (the "Mortgage(s)") upon receipt of reduced payoff amount(s).

   Approval of, or agreement to, items (a) through (c) by Seller's Lender is referred to as "Short Sale Approval". However, an approval by Seller's Lender which does not provide a waiver and complete release of any claim(s) for a deficiency against Seller for sums due Seller's Lender under the Mortgage(s) as of the payoff date, or which requires additional terms or obligations affecting either party shall not be deemed "Short Sale Approval" unless the party affected accepts those additional terms or obligations in writing. A copy of a Short Sale Approval accepted by Seller shall be delivered by Seller to Buyer and Closing Agent within 3 days of Seller's receipt of such Short Sale Approval.

2. **Application for Approval of Short Sale.** Seller shall within _____ (if left blank, then 10) days after Effective Date obtain from Seller's Lender their application forms for a "short sale", and Seller shall diligently complete and return such forms to Seller's Lender within 5 days thereafter and promptly provide such additional documents as may be requested by Seller's Lender.

3. **Status of Short Sale Approval Application.** Seller hereby authorizes Seller's Lender to provide Buyer and Buyer's Broker and Closing Agent with information stating the status of Seller's application for approval of a Short Sale and notice of the approval(s) or denial(s) of such application(s). Seller shall promptly notify Buyer when Seller obtains Short Sale Approval as provided in Paragraph 1 above, or denial of such approval from Seller's Lender.

4. **Short Sale Approval Deadline; Termination.** If Seller does not deliver a copy of Seller's accepted Short Sale Approval to Buyer within _____ (if left blank, then 90) days from Effective Date ("Short Sale Approval Deadline"), then either party may thereafter terminate this Contract by delivering written notice to the other party, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

   This Contract shall automatically terminate if Seller has not delivered the Short Sale Approval to Buyer within 30 days after expiration of the Short Sale Approval Deadline, including any extension(s) of the Short Sale Approval Deadline ("Contract Expiration Date"), in which event the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

5. **Time Periods.** The time for making the initial deposit specified in Paragraph 2(a) and for calculating the Short Sale Approval Deadline shall be computed from the Effective Date. All other time periods and other obligations under this Contract shall commence from the date of Buyer's receipt of Short Sale Approval pursuant to Paragraph 1 above.

6. **Closing Date.** The Closing Date shall be _____ (if left blank, then 45) days after Buyer receives Short Sale Approval pursuant to Paragraph 1 above.

CR-5  Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 021887-600153-1492693

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 1ef3167a-4f9a-4853-bf7b-f567759076d4 ]

**7. Back-up Offers. (CHECK ONE - If no option is checked, then option (a) shall be deemed selected):**

(a) ☐ **Seller's Agreement Not to Accept Other Contracts or Offers.** During the term of this Contract, Seller shall not accept or enter into any back-up offers, contracts, options or other agreements concerning the sale of the Property.

(b) ☒ **Seller's Right to Accept Back-up Contracts or Offers.** During the term of this Contract, Seller may accept or enter into bona fide "back-up" contracts or offers to purchase the Property that are conditioned upon a failure of the Closing of the sale contemplated by this Contract.

**8. Acknowledgement by Seller.**

(a) If Seller is advised of Seller's Lender's refusal to participate in any short sale, Seller agrees to immediately communicate this to Buyer and Broker.

(b) Seller acknowledges that Broker has advised Seller to consult with professionals for any tax, legal or specialized advice and has been encouraged to discuss other options with legal counsel of Seller's choosing prior to entering into this short sale transaction.

**9. Acknowledgement by Buyer.**

(a) Buyer acknowledges Seller's Lender is not a party to this Contract and therefore is not obligated to approve this Contract; that Seller's acceptance of this Contract does not guarantee Seller's Lender's acceptance; and Seller's Lender is under no obligation to consider, respond, approve or advise either Seller or Buyer, or Broker as to any offer submitted to it.

(b) Buyer further acknowledges that Seller and/or Broker shall not be liable for delays caused by Seller's Lender or costs and expenses (such as payments for loan applications, inspections and appraisals) incurred by Buyer under this Contract if Seller's Lender does not complete the short sale after Seller's receipt of Short Sale Approval.

**10. Termination Upon Foreclosure Sale.** If during the term of this Contract, the Property is sold at foreclosure sale prior to the parties obtaining Short Sale Approval and Closing the transaction contemplated by this Contract, this Contract shall be terminated, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

CR-5  Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: **021887-600153-1492693**

formsimplicity

Electronically Signed using eSignOnline™ [ Session ID : 1ef3167a-4f9a-4853-bf7b-f567759076d4 ]

## Addendum to Contract for Residential Sale and Purchase



1  If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2* between _____ Manuel Gomez _____ ("Seller")
3* and _____ Ivan Cejas _____ ("Buyer")
4* concerning the Property described as 510 N.W. 106 Terrace, Pembroke Pines, FL 33026 _____
5  _____

6* (_IC_) (_____) - (_MG_) (_____) **J. Homeowners' Association:** The Property is located in a community with a
7* ☐ voluntary ☒ mandatory (see the Disclosure Summary below) homeowners' association ("Association"). **Seller's**
8  warranty under Paragraph **8** of this Contract, risk of loss under Paragraph **9** of this Contract, or As Is with Right to
9  Inspect Addendum (if applicable) extend only to the Property and does not extend to common areas or facilities
10 described below.

11 **Notice:** Association documents may be obtained from the county record office or, if not a public record, from the
12 developer or Association manager. The Property may be subject to recorded restrictive covenants governing the use
13 and occupancy of properties in the community and may be subject to special assessments.

14 **1. Association Approval:** If the Association documents give the Association the right to approve **Buyer** as a
15 purchaser, this Contract is contingent on such approval by the Association. **Buyer** will apply for approval within
16* _____ days (5 days if left blank) after Effective Date and use diligent effort to obtain approval, including making
17 personal appearances and paying related fees if required. **Seller** and **Buyer** will sign and deliver any documents
18 required by the Association to complete the transfer. If **Buyer** is not approved, this Contract will terminate; and
19 **Buyer's** deposit(s) will be refunded unless this Contract provides otherwise.

20 **2. Right of First Refusal:** If the Association has a right of first refusal to buy the Property, this Contract is contingent
21 on the Association deciding not to exercise such right. **Seller** will, within 3 days after receipt of the Association's
22 decision, give **Buyer** written notice of the decision. If the Association exercises its right of first refusal, this
23 Contract will terminate, **Buyer's** deposit(s) will be refunded unless this Contract provides otherwise, and **Seller**
24 will pay broker's full commission at Closing in recognition that broker procured the sale.

25 **3. Fees: Buyer** will pay any application, transfer, and initial membership fees charged by the Association. **Seller** will
26 pay all fines imposed against the Property as of Closing and any fees the Association charges to provide
27 information about its fees or the Property and will bring maintenance and similar periodic fees and rents on any
28 recreational areas current as of Closing. If, after Effective Date, the Association imposes a special or other
29 assessment for improvements, work, or services, **Seller** will pay all amounts due before Closing and **Buyer** will
30* pay all amounts due on or after Closing. If special assessments may be paid in installments ☐**Seller** ☐**Buyer**
31 (**Buyer** if left blank) will pay installments due after Closing. If **Seller** is checked, **Seller** will pay the assessment in
32 full before or at Closing. **Seller** represents that he/she is not aware of any pending special or other assessment
33* that has been levied by the Association, except as follows: _____
34 _____

35 **Seller** represents that he/she is not aware of any pending special or other assessment that has been an item on
36 the agenda or reported in the minutes of the Association within 12 months before Effective Date ("Pending"),
37* except as follows: _____
38 _____

39 If special or other assessments, levied or Pending, exist as of Effective Date and have not been disclosed
40 above by **Seller**, then **Seller** will pay such assessments in full before or at Closing.

41 The following dues, maintenance, and/or fees are currently charged by the Association:
42* $270.00_____ per_____ month ____ to_____ Southbridge Homeowners Association _____
43* $_____ per_____ to_____
44* $_____ per_____ to_____

**(See Continuation)**

Electronically Signed using eSignOnline™ [ Session ID : 1ef3167a-4f9a-4853-bf7b-f567759076d4 ]

J. Homeowners' Association Addendum (**Continued**)

45 **4. Damage to Common Elements:** If any portion of the common elements is damaged due to fire, hurricane, or
46 other casualty before Closing, either party may cancel this Contract and **Buyer's** deposit(s) will be refunded if (i)
47 as a result of damage to the common elements, the Property appraises below the purchase price and either
48 the parties cannot agree on a new purchase price or **Buyer** elects not to proceed, or (ii) the Association
49 cannot determine the assessment attributable to the Property for the damage at least 5 days before
50 Closing, or (iii) the assessment determined or imposed by the Association attributable to the Property for the
51* damage to the common elements is greater than $_____ or _____% (1.5% if left blank) of the
52 purchase price.

53 **5. Disclosure Summary for Mandatory Associations:** IF THE DISCLOSURE SUMMARY REQUIRED BY
54 SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE
55 PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS
56 VOIDABLE BY **BUYER** BY DELIVERING TO **SELLER** OR **SELLER'S** AGENT OR REPRESENTATIVE
57 WRITTEN NOTICE OF THE **BUYER'S** INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF
58 THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY
59 PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. **BUYER'S** RIGHT TO VOID THIS
60 CONTRACT SHALL TERMINATE AT CLOSING.

61* **DISCLOSURE SUMMARY FOR (Name of Community):**_____ Southbrige

62 (a) AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER
63 OF A HOMEOWNERS' ASSOCIATION.
64 (b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND
65 OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
66 (c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE
67* SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____
68* PER _____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS
69 IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF
70* APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
71 (d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY,
72 COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
73 (e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY
74 HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
75 (f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER
76 COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE
77* HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____
78* PER _____.
79 (g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE
80 APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
81 (h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND,
82 AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE
83 ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
84 (i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM
85 THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT
86 RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

87 **Buyer** acknowledges receipt of this Disclosure Summary before signing this Contract.

88* _Ivan Cejas_____   07/13/2018_____   _____   _____
89 **Buyer**                          Date              **Buyer**                           Date

**Buyer** (_IC_) (_____) and **Seller** (_MG_) (_____) acknowledge receipt of a copy of this page.

# EXHIBIT B

**HUD-1**

A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

B. Type of Loan

| | | | 6. File Number | 7. Loan Number | 8. Mortg. Ins. Case Num. |
|---|---|---|---|---|---|
| ○ 1. FHA | ○ 2. FmHA | ○ 3. Conv. Unins. | 1110 | | |
| ○ 4. V.A. | ○ 5. Conv. Ins. | | | ID: | |

C. **NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:
    Address of Borrower:                                                     TIN:

E. NAME OF SELLER:
    Address of Seller:

**DRAFT**

F. NAME OF LENDER:
    Address of Lender:

G. PROPERTY LOCATION:   510 NW 106 TERR, Pembroke Pines, Florida 33026

H. SETTLEMENT AGENT:   Law Group of South Florida, LLC                            TIN:
    Place of Settlement:   782 NW Le Jeune Rd., Suite # 347, Miami, Florida 33126             Phone: 305-260-6147

I. SETTLEMENT DATE:   8/15/19                       DISBURSEMENT DATE:   8/15/19

| J. Summary of borrower's transaction | | K. Summary of seller's transaction | |
|---|---|---|---|
| **100. Gross amount due from borrower:** | | **400. Gross amount due to seller:** | |
| 101. Contract sales price | 212,000.00 | 401. Contract sales price | 212,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (Line 1400) | 1,483.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance:** | | **Adjustments for items paid by seller in advance:** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. Non-Ad Valorem Taxes from 08/15/19 to 09/30/19 | 37.92 | 409. Non-Ad Valorem Taxes from 08/15/19 to 09/30/19 | 37.92 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross amount due from borrower:** | 213,521.42 | **420. Gross amount due to seller:** | 212,037.92 |
| **200. Amounts paid or in behalf of borrower:** | | **500. Reductions in amount due to seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 28,861.64 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Principal amount of second mortgage | | 504. Payoff of first mortgage loan | 224,287.66 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | 507. Principal amt of mortgage held by seller | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller:** | | **Adjustments for items unpaid by seller:** | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes from 01/01/19 to 08/15/19 | 760.50 | 511. County taxes from 01/01/19 to 08/15/19 | 760.50 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for borrower:** | 760.50 | **520. Total reductions in amount due seller:** | 253,909.80 |
| **300. Cash at settlement from/to borrower:** | | **600. Cash at settlement to/from seller:** | |
| 301. Gross amount due from borrower (line 120) | 213,521.42 | 601. Gross amount due to seller (line 420) | 212,037.92 |
| 302. Less amount paid by/for the borrower (line 220) | (760.50) | 602. Less total reductions in amount due seller (line 520) | (253,909.80) |

| 303. Cash ( ☑ From ☐ To ) Borrower: | 212,760.92 | 603. Cash ( ☐ To ☑ From ) Seller: | 41,871.88 |

**Substitute Form 1099 Seller Statement:**    The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS.  If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

**Seller Instructions:**    If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6262 and/or Schedule D (Form 1040).

Borrower's Initial(s):

Seller's Initial(s):

**DoubleTime®**

Case 10-16796-RBR   Doc 42   Filed 07/30/13   Page 25 of 37

| L. Settlement charges | | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Brokers Com. based on price | $212,000.00 @ | 6.0000 % = 12,720.00 | Borrower POC | Seller POC |
| 701. | 6,360.00 | 3.0000 % to Floridian Realty Corp. | | |
| 702. | 6,360.00 | 3.0000 % to Floridian Realty Corp. | | |
| 703. Commission paid at settlement | | | | 12,720.00 |
| 704. Broker Processing Fee | to Floridian Realty Corp. | | | 400.00 |
| **800. Items payable in connection with loan:** | | Borrower POC | Seller POC | |
| 801. Loan origination fee | % to | | | |
| 802. Loan discount | % to | | | |
| 803. Appraisal fee | to | | | |
| 804. Credit report | to | | | |
| 805. Lender's inspection fee | to | | | |
| 806. Mortgage insurance application fee | to | | | |
| 807. Assumption Fee | to | | | |
| 808. | to | | | |
| 809. | to | | | |
| 810. | to | | | |
| 811. | to | | | |
| **900. Items required by lender to be paid in advance:** | | Borrower POC | Seller POC | |
| 901. Interest from | @ | /day | | |
| 902. Mortgage insurance premium for | months to | | | |
| 903. Hazard insurance premium for | years to | | | |
| 904. Flood insurance premium for | years to | | | |
| 905. | years to | | | |
| **1000. Reserves deposited with lender:** | | Borrower POC | Seller POC | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Annual assessments | months @ | per month | | |
| 1006. Flood insurance | months @ | per month | | |
| 1007. | months @ | per month | | |
| 1008. | months @ | per month | | |
| 1009. Aggregate accounting adjustment | | | | |
| **1100. Title charges:** | | Borrower POC | Seller POC | |
| 1101. Settlement or closing fee | to Law Group of South Florida, LLC | | 750.00 | 950.00 |
| 1102. Abstract or title search | to Law Group of South Florida, LLC | | | 200.00 |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's Fees | to Law Group of South Florida, LLC | | | 500.00 |
| (includes above item numbers: | ) | | | |
| 1108. Title Insurance | to Old Republic National Title Insurance Company/Law Group | | | 1,135.00 |
| (includes above item numbers: | ) | | | |
| 1109. Lender's coverage (Premium): | | | | |
| 1110. Owner's coverage (Premium): | $212,000.00 ($1,135.00) | | | |
| 1111. Endorse: 5.1-25;SE-25 | | | 50.00 | |
| 1112. Municipal Lien Search | to SKYLINE LIEN SEARCH INC. | | | 350.00 |
| 1113. | to | | | |
| **1200. Government recording and transfer charges:** | | Borrower POC | Seller POC | |
| 1201. Recording fees | Deed $27.00 Mortgage(s) | $256.50 Releases | 283.50 | |
| 1202. City/county tax/stamps | Deed Mortgage(s) | | | |
| 1203. State tax/stamps | Deed $1,484.00 Mortgage(s) | | | 1,484.00 |
| 1204. | to | | | |
| 1205. | to | | | |
| **1300. Additional settlement charges:** | | Borrower POC | Seller POC | |
| 1301. Survey | to ENPAV, INC. | | 400.00 | |
| 1302. Pest Inspection | to | | | |
| 1303. Delinquent HOA Fees | to HOA | | | 11,122.64 |
| 1304. | to | | | |
| 1305. | to | | | |
| 1306. | to | | | |
| 1307. | to | | | |
| 1308. | to | | | |
| 1309. | | | | |
| **1400. Total settlement charges:** | | | | |

DRAFT

| | | |
|---|---|---|
| 1400. Total settlement charges. | | |
| ( Enter on lines 103, Section J and 502, Section K ) | 1,483.50 | 28,861.64 |

Case 1:17796-RBR Doc 42 Filed 07/30/19 Page 26 of 27

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____ Borrower        _____ Seller
Ivan Cejas                                                Manuel Gomez

_____ Borrower        _____ Seller


The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with this statement.

    Law Group of South Florida, LLC

By: _____        _____
    As Its Authorized Representative                        Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**DoubleTime®**

# EXHIBIT C



PO Box 77404
Ewing NJ 08628

+ 0326605 000015943 095P04 00064005 M0
MANUEL GOMEZ
510 NW 106TH TER
PEMBROKE PNES, FL 33026





CENTRAL LOAN ADMINISTRATION & REPORTING

07/19/2019

Hours of Operation
Customer Service Hours Monday – Friday  8:30 AM to 8:00 PM ET
Collections Dept Monday – Friday 8:30 AM to 10:00 PM EST

MANUEL GOMEZ
510 NW 106TH TER
PEMBROKE PNES, FL 33026

**Qualified Written Requests, notifications of error, or requests for
information concerning your loan must be directed to:
PO Box 77423, Ewing, NJ 08628**



RE:  Loan Number:        ███3767
     Property Address:   510NW106 TER
                         PEMBROKE PINES, FL 33026

Dear Borrower(s):

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided, you are eligible to move forward in the Pre-foreclosure Sale Program offered by the U.S. Department of Housing and Urban Development.

Attached is the Approval to Participate form that outlines the requirements of the program. You must review the form, sign, and return it to us no later than 07/26/2019.

Please send a signed copy by facsimile to (609)718-2655 or by email at liquidations@loanadministration.com to ensure that you are meeting the program requirements. Failure to return the signed form within 7 days of the issue date will render you ineligible to proceed and your file will be denied.

Once you have signed and returned the Approval to Participate form, the following contract conditions are required based on the current appraised value of $212,000.00.

Your submitted contract has met the minimum net of $186,560.00 and your approval to participate in the program is attached. If you have an approved workout we will suspend the next legal action on the foreclosure proceedings. If the workout does not close, we will continue with the foreclosure action.

Based on the FHA guidelines, borrowers are eligible for an Incentive Compensation when completing a Pre-foreclosure Sale. However, Borrower's Incentive Compensation will not be offered to owners who have vacated the property making the borrower a non-owner occupant or borrowers who are required to make a cash contribution at closing. Based on our review, below is your cash contribution requirement:

326605  000015943  09SP04  00064005

Cash Contribution Required:  $0.00

Loss mitigation options may have costs associated with them that you may be responsible for after completion of loss mitigation. Examples of these costs include title searches, appraisals, and valuations. The costs may vary depending on the loan information, geographic area, etc. Please contact us for information on costs that may be associated with your loss mitigation evaluation.

If you have any questions, please contact us 855-839-6253

Sincerely,

Liquidation Department

Cancellation of debt may have tax consequences. Please consult your tax advisor to discuss potential tax consequences.



THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. If you are in active bankruptcy, this notice is for informational purposes only and is not an attempt to collect a debt in violation of the bankruptcy automatic stay. Your loan will be administered in your bankruptcy case. You have no affirmative obligation to respond to this notice.

NOTICE REGARDING DEBT DISCHARGED IN BANKRUPTCY This notice is for informational purposes only and is not an attempt to collect a debt for which your personal liability has been discharged in bankruptcy. You no longer have any personal liability in connection with this mortgage loan and nothing in this notice is intended to state or imply otherwise. This notice is being sent with respect to our lien interest in the mortgaged property only. Any action taken is for the sole purpose of protecting our lien interest in the mortgaged property including the right to foreclose the mortgaged property. If you wish to retain your property, you may pay the amount due under the loan. Failure to make such payments to retain your property may only result in our exercising any lien rights against the mortgaged property and will not result in any personal liability to you.

SS037 012  MO V3

326605  000015943  09SP04  00064005

| Approval to Participate Pre-foreclosure Sale Procedure Property Sales Information Property Occupancy & Maintenance | U. S. Department of Housing and Urban Development<br>Office of Housing<br>Federal Housing Commissioner | OMB Approval No. 2502-0589<br>(exp. 12/31/2019) |
|---|---|---|

**Public reporting burden** for this collection of information is estimated to average 9 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This information is required to obtain benefits. HUD may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

Section 204 of the National Housing Act authorizes the Secretary to pay an insurance claim that bridges the gap between the fair market value proceeds from the HUD-approved third party sale of a property. The respondent's maybe lenders (mortgagee's), counselors and homeowners who are attempting to sell their properties prior to foreclosure. The Privacy Act of 1974 pledges assurances of confidentiality to respondents. HUD generally discloses this data only in response to a Freedom of Information request.

| Mortgagee Contact Person and Phone Number<br>Louis Cuevas ▮▮▮▮▮▮▮▮ | Control Number<br>▮▮▮▮▮▮ | FHA Case Number:<br>▮▮▮▮▮▮▮▮ | Date:<br>07/19/2019 |
|---|---|---|---|
| Homeowner Name(s):<br>MANUEL GOMEZ<br>Homeowner Signature(s): | | Property Address:<br>510NW106 TER<br>PEMBROKE PINES, FL 33026 | |

### Homeowner(s): Please Read This Information Carefully.

**Approval to Participate**

Based upon your request to participate in the HUD Pre-foreclosure Sale (PFS) Program, a review of your loan has been completed and you have been **Approved to Participate**. By signing this Approval to Participate form and returning to the above- referenced lender, you agree to abide by the following conditions of the program. The lender must receive a signed copy no later than 10 days from the date on this form.

**Property Sales Information**

The property must be listed for sale with a licensed real estate broker/agent unrelated to you within 7 days of your receipt of this letter for a list price no less than $212,000.00, which is the "AS-IS" value indicated on the FHA appraisal of your property. The listing agreement must include the following specific cancellation clause in the event the terms of a sale are not acceptable to HUD: "Seller may cancel this agreement prior to the ending date of the listing period without advance notice to the broker/agent, and without payment of a commission or any other consideration if the property is conveyed to the mortgage insurer or the mortgage holder." The sale completion is subject to approval (under HUD guidelines) by the lender.

Your deadline to obtain a signed Sales Contract from a qualified buyer is 09/17/2019. If you are unable to obtain an acceptable contract by this date, your lender may review your loan for the Deed-in-Lieu of Foreclosure option or commence/ recommence foreclosure.

**Acceptable Terms of Sale**

The standard marketing period for a PFS listing is 4 months from the date of this letter. Program criteria require that the net amount payable to HUD as a result of this sale, after allowable expenses, is at least $186,560.00, which meets the 88% net sale proceeds requirement for when the property is sold within the first 30 days from the date of this Approval to Participate. Thereafter, the net amount payable to HUD will be as follows: 86% net sale proceeds required if sold between day 31-60, and 84% net sale proceeds required if sold during the last 60 days of the marketing period.

You must submit a Sales Contract for approval to the lender contact named above. The sale must be an arm's length transaction; the buyer cannot be a member of your family, business associate, or other favored party. No hidden terms or special understandings may exist with the buyer, seller, appraiser, closing agent or lender. If you negotiate with a buyer to pay for discount points, a home warranty, repairs not required for a new mortgage or other costs normally paid by the buyer, you must pay for these expenses.

You may also be required to pay prorated real estate taxes and assessments at closing. Your lender can explain which sales costs may be deducted from HUD's sale proceeds.

**Cash Contribution**

Owner-occupant homeowners may be required to submit a Cash Reserve Contribution to participate in the PFS Program. Your required Cash Reserve Contribution is $0.00 . This amount must be applied toward the PFS transaction at closing.

**Relocation Services**

A relocation service affiliated with your employer may contribute a fixed sum towards the proceeds of the PFS, without altering the arm's length nature of the sale. This contribution simply reduces the shortfall between the proceeds and the amount owed on the mortgage note. As with any other PFS, such a transaction must result in the outright sale of the property and cancellation of the FHA mortgage insurance.

**Occupancy and Property Maintenance**

You are responsible for property maintenance and repair until closing. This includes, but is not limited to, cutting the grass, snow removal, regular interior and exterior cleaning, immediate repair of broken doors and windows, and payment of utility bills as they become due. If the property is vacant or becomes vacant during marketing, you must inform your lender immediately and ensure that the property is protected from freeze damage by "winterizing" plumbing pipes. You may arrange with your broker/ agent to provide property maintenance, but you will continue to be responsible for the condition of the home until it is sold. Damage and repair expenses resulting from fire, flood, or other natural causes must be reported immediately to the insurance company and to your lender.

**Homeowner's Incentive**

Owner-occupant homeowners who are not required to make minimum cash reserve contributions and successfully sell their properties using this program are relieved of their mortgage obligation and may be entitled to a cash Incentive up to $3,000. You may apply a portion or the entire amount of the $3,000 to resolve junior liens and to offset the sales transaction costs not paid by HUD (including a home warranty plan fee, costs associated with optional repairs, and buyer's closing expenses). Eligible homeowners are permitted at closing to receive the remaining amount from the aforementioned $3,000 consideration. This remaining amount may only be used for transition or relocation assistance.

**Questions concerning any of this information or your responsibilities in the PFS Sale Program, must be directed to the contact person at your lender's office at the above telephone number.**

form **HUD - 90045** (09/2016)



07/19/2019

Hours of Operation
Customer Service Hours Monday – Friday  8:30 AM to 8:00 PM ET
Collections Dept Monday – Friday 8:30 AM to 10:00 PM EST

MANUEL GOMEZ
510 NW 106TH TER
PEMBROKE PNES, FL 33026



**Qualified Written Requests, notifications of error, or requests for
information concerning your loan must be directed to:
PO Box 77423, Ewing, NJ 08628**

RE:  Loan Number:        ██████67
      Property Address:  510NW106 TER
                         PEMBROKE PINES, FL 33026



Dear Borrower(s):

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided, you are eligible to move forward in the Pre-foreclosure Sale Program offered by the U.S. Department of Housing and Urban Development.

Attached is the Approval to Participate form that outlines the requirements of the program. You must review the form, sign, and return it to us no later than 07/26/2019.

Please send a signed copy by facsimile to (609)718-2655 or by email at liquidations@loanadministration.com to ensure that you are meeting the program requirements. Failure to return the signed form within 7 days of the issue date will render you ineligible to proceed and your file will be denied.

Once you have signed and returned the Approval to Participate form, the following contract conditions are required based on the current appraised value of $212,000.00.

Your submitted contract has met the minimum net of $186,560.00 and your approval to participate in the program is attached. If you have an approved workout we will suspend the next legal action on the foreclosure proceedings. If the workout does not close, we will continue with the foreclosure action.

Based on the FHA guidelines, borrowers are eligible for an Incentive Compensation when completing a Pre-foreclosure Sale. However, Borrower's Incentive Compensation will not be offered to owners who have vacated the property making the borrower a non-owner occupant or borrowers who are required to make a cash contribution at closing. Based on our review, below is your cash contribution requirement:

Loan Number: ██████3767

Cash Contribution Required:  $0.00

Loss mitigation options may have costs associated with them that you may be responsible for after completion of loss mitigation. Examples of these costs include title searches, appraisals, and valuations. The costs may vary depending on the loan information, geographic area, etc. Please contact us for information on costs that may be associated with your loss mitigation evaluation.

If you have any questions, please contact us 855-839-6253

Sincerely,

Liquidation Department

Cancellation of debt may have tax consequences. Please consult your tax advisor to discuss potential tax consequences.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. If you are in active bankruptcy, this notice is for informational purposes only and is not an attempt to collect a debt in violation of the bankruptcy automatic stay. Your loan will be administered in your bankruptcy case. You have no affirmative obligation to respond to this notice.



NOTICE REGARDING DEBT DISCHARGED IN BANKRUPTCY This notice is for informational purposes only and is not an attempt to collect a debt for which your personal liability has been discharged in bankruptcy. You no longer have any personal liability in connection with this mortgage loan and nothing in this notice is intended to state or imply otherwise. This notice is being sent with respect to our lien interest in the mortgaged property only. Any action taken is for the sole purpose of protecting our lien interest in the mortgaged property including the right to foreclose the mortgaged property. If you wish to retain your property, you may pay the amount due under the loan. Failure to make such payments to retain your property may only result in our exercising any lien rights against the mortgaged property and will not result in any personal liability to you.

SS037 012  MO V3



PO Box 77404
Ewing NJ 08628

+ 0326605 000015942 095P04 00064005 M0
MANUEL GOMEZ
510 NW 106TH TER
PEMBROKE PNES, FL 33026





### CENLAR®
#### CENTRAL LOAN ADMINISTRATION & REPORTING

07/19/2019

Hours of Operation
Customer Service: Monday - Friday,    8:30 AM to 8:00 PM ET
Collections Dept: Monday - Friday,    8:30 AM to 10:00 PM ET

MANUEL GOMEZ
510 NW 106TH TER
PEMBROKE PNES, FL 33026

RE: Loan Number:        ███3767
Property Address:    510NW106 TER
PEMBROKE PINES, FL 33026

Dear Borrower(s):

Attached please find HUD form 90035, "Pre-foreclosure Sale Procedure" Information sheet that contains additional information regarding the pre-foreclosure sale process and requirements.

Loss mitigation options may have costs associated with them that you may be responsible for after completion of loss mitigation. Examples of these costs include title searches, appraisals and valuations. The costs may vary depending on the loan information, geographic area, etc. Please contact us for information on costs that may be associated with your loss mitigation evaluation.

If you have any questions, please contact us at the number provided herein.

Sincerely,

Loan Workout Department

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NOTICE REGARDING DEBT DISCHARGED IN BANKRUPTCY –** If you have received a discharge of your personal liability in connection with the mortgage loan referenced in this notice, this notice is for informational purposes only and is not an attempt to collect a debt that has been discharged as the result of a bankruptcy proceeding.  You no longer have any personal liability in connection with this mortgage loan and nothing in this notice is intended to state or imply otherwise. This notice is being sent with respect to our lien rights against the mortgaged property only. Any action taken is for the sole purpose of protecting our lien interest in the mortgaged property including the right to foreclose the mortgaged property. If you wish to retain your property, you may pay the amount due under the loan. Failure to make such payments to retain your property may only result in our exercising any lien rights against the mortgaged property and will not result in any personal liability to you.

**NOTICE REGARDING THE BANKRUPTCY AUTOMATIC STAY -** This notice is for informational purposes only and is not an attempt to collect a debt in violation of the bankruptcy automatic stay.  If you are in an active bankruptcy, your loan will be administered in your bankruptcy case. You have no affirmative obligation to respond to this notice, but we do ask that you provide us with your bankruptcy case number, chapter, jurisdiction, and your attorney's name and phone number so that we may properly code your account to reflect your active bankruptcy case status.

SS035 009  MO V3

---

3767 MO

326605  000015942  09SP04  00064005

# Information Sheet

Pre-foreclosure Sale Procedure

U.S. Department of Housing and
Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0589
(exp. 12/31/2019)

**Public reporting burden** for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This information is required to obtain benefits. HUD may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

Section 1064 of the Stewart B. McKinney Homeless Assistance Amendments Act of 1988 authorizes the Secretary to pay an insurance claim that "bridges the gap" between the fair market value proceeds from the HUD-approved third party sale of a property. The respondents are lenders, counselors, and homeowners who are attempting to sell their properties prior to foreclosure. The Privacy Act of 1974 pledges assurances of confidentiality to respondents. HUD generally discloses this data only in response to a Freedom of Information request.

Homeowners who have defaulted on their mortgages often attempt to sell their properties in order to avoid foreclosure and to protect their credit standing. However, because of declining property values in certain areas, some homeowners cannot realize enough from the sale to pay off their mortgage balances.

Therefore, the Department of Housing and Urban Development (HUD) has implemented the Pre-foreclosure Sale (PFS) Program. This program permits homeowners to attempt to sell their home for a fair market sale price, which can be less than the amount owed to the lender. HUD then reimburses the lender for the difference between the sale proceeds and the outstanding mortgage indebtedness.

Homeowners who sell their properties under the PFS Program may also benefit by avoiding the effect of a foreclosure on their credit rating.

Upon review of the homeowner's financial situation, the lender will determine the type of PFS process for which the homeowner qualifies: (1) Standard PFS, (2) Streamlined PFS, or (3) Streamlined PFS for Servicemembers with Permanent Change of Station Orders.

Once the type of PFS has been determined, there are certain criteria which must be met before the homeowner may be permitted to pursue a PFS.

Homeowners must engage the services of a real estate broker/agent. The real estate broker/agent selected must have no conflict of interest with the homeowner, lender, appraiser, or buyer associated with the PFS transaction. The transaction must be between two unrelated parties and be characterized by a selling price and other conditions that would prevail in a typical real estate sales transaction. If the homeowner secures a sales contract prior to receiving the Approval to Participate, the homeowner may submit the contract to the lender for consideration of PFS Program approval.

Owner-occupant homeowners who are not required to make minimum cash reserve contributions and successfully sell their properties using this program are relieved of their mortgage obligation and may be entitled to a cash incentive up to $3,000. The homeowner may apply a portion or the entire amount of the $3,000 consideration to resolve junior liens and to offset the sales transaction costs not paid by HUD (including a home warranty plan fee, costs of optional repairs, and buyer's closing expenses). Eligible homeowners are permitted at closing to receive the remaining amount from the aforementioned $3,000 consideration. This remaining amount may only be used for transition or relocation assistance.

If, after a good faith effort, an acceptable purchase offer is not obtained within the allotted time, the lender may accept a Deed-in-Lieu (DIL) of Foreclosure from the homeowner. While a DIL is less desirable than a PFS on a homeowner's credit record, it is still looked upon more favorably by creditors than a foreclosure.

By calling this number, 855-839-6253, the homeowner will receive further details from their lender about the procedure and whether they may qualify. **Please NOTE that the homeowner is under no obligation to make this call.**

326605  000015942  09SP04  00064005